## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH JEAN-CHARLES, a/k/a JEAN-CHARLES JOSEPH, *et al.* | : | LEAD CIVIL ACTION NO.: |
| Plaintiffs, | : | 3:11-CV-00614 (JCH) |
| v. | : | |
| | : | |
| DOUGLAS PERLITZ; FATHER PAUL E. CARRIER, S.J.; HOPE E. CARTER; HAITI FUND, INC.; FAIRFIELD UNIVERSITY; THE SOCIETY OF JESUS OF NEW ENGLAND; JOHN DOE ONE; JOHN DOE TWO; JOHN DOE THREE; JOHN DOE FOUR; JOHN DOE FIVE; JOHN DOE SIX; JOHN DOE SEVEN; JOHN DOE EIGHT; JOHN DOE NINE; JOHN DOE TEN; JOHN DOE ELEVEN; AND JOHN DOE TWELVE, | : : : : : : : : : : | |
| | : | |
| Defendants. | : | JANUARY 30, 2012 |

## FAIRFIELD UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS

Stanley A. Twardy, Jr. (ct 05096)
Thomas D. Goldberg (ct 04386)
Jaclyn K. Leung (ct 27399)
Day Pitney LLP
One Canterbury Green
Stamford, CT  06901-2047
Tel: (203) 977-7300
Fax: (203) 977-7301

Attorneys For Defendant
Fairfield University

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

ALLEGATIONS OF THE COMPLAINTS ....................................................................................3

    A.    Background.............................................................................................................3

    B.    Allegations Against Fairfield University................................................................4

            1.    The University's Relationship With PPT ....................................................5

            2.    The University's Relationship With Perlitz...............................................5

            3.    The University's Lack of Knowledge of Perlitz's Misconduct.................6

    C.    Claims Against Fairfield University......................................................................7

ARGUMENT....................................................................................................................................8

I.       THE APPLICABLE LEGAL STANDARD ....................................................................8

II.      THE FIFTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD
        UNIVERSITY FOR NEGLIGENT HIRING, RETENTION, DIRECTION OR
        SUPERVISION OF PERLITZ .........................................................................................9

    A.    Fairfield University Did Not Employ Perlitz .......................................................9

    B.    Plaintiffs Fail To Allege Any Breach Of The Purported Duty.............................12

III.    THE SIXTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD
        UNIVERSITY FOR NEGLIGENT HIRING, RETENTION, DIRECTION OR
        SUPERVISION OF FATHER CARRIER ......................................................................12

    A.    Fairfield University Owed No Duty To Supervise Father Carrier In
           Connection With The Alleged Misconduct...........................................................13

            1.    The Allegations Do Not Fall Within The Narrow Scope Of
                 Circumstances Where A Party Has A Duty To Prevent Harm To
                 Others......................................................................................................13

            2.    Plaintiffs' Allegations Do Not Meet The Foreseeability and Policy
                 Requirements For Imposition Of A Duty .................................................16

    B.    The Complaints Fail Properly To Allege A Breach Of The Alleged Duty ..........19

            1.    Negligent Hiring....................................................................................19

             2.    Negligent Supervision, Direction or Retention ........................................20

IV.    THE SEVENTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD
        UNIVERSITY FOR BREACH OF FIDUCIARY DUTY ..............................................21

    A.    Fairfield University Did Not Owe A Fiduciary Duty to Plaintiffs......................21

    B.    Plaintiffs Have Failed Adequately To Plead A Breach Of Any Purported
           Fiduciary Duty.....................................................................................................24

## TABLE OF CONTENTS
(continued)

                                                                                    **Page**

V.     THE EIGHTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD
       UNIVERSITY FOR VICARIOUS LIABILITY ............................................................25

       A.     The Complaints Do Not Adequately Allege That Perlitz Was An Agent Of
              Fairfield University...........................................................................................25

       B.     Perlitz Was Not Acting Within The Scope Of His Employment And In
              Furtherance Of Any Business Of Fairfield University .........................................27

VI.    THE TWELFTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD
       UNIVERSITY PURSUANT TO 18 U.S.C. § 1595 ........................................................29

CONCLUSION .................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A-G Foods, Inc. v. Pepperidge Farm, Inc.,*
  216 Conn. 200 (1990)....................................................................................27, 28

*Abate v. Circuit-Wise, Inc.,*
  130 F. Supp. 2d 341 (D. Conn. 2001)...........................................................20, 27

*Adhikari v. Daoud & Partners,*
  697 F. Supp. 2d 674 (S.D. Tex. 2009)..........................................................29, 30

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009).................................................................................8, 9, 11

*Baker v. Spinney,*
  No. CV 07 5001737, 2008 Conn. Super. LEXIS 1424 (Super. Ct. June 2, 2008) .................17

*Bass v. Miss Porter's Sch.,*
  738 F. Supp. 2d 307 (D. Conn. 2010)....................................................21, 22, 23

*Beardslee v. Disposal,*
  No. CV 960324450S, 1999 Conn. Super. LEXIS 2999 (Super. Ct. Nov. 4, 1999)...............15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...........................................................................................8

*Biller Assocs. v. Peterken,*
  269 Conn. 716 (2004)........................................................................................21

*Brown v. Housing Auth.,*
  23 Conn. App. 624 (1990)..................................................................................27

*Chylinski v. Bank of Am., N.A.,*
  630 F. Supp. 2d 218 (D. Conn. 2009)...........................................................passim

*Dignan v. McGee,*
  No. 07-cv-1307, 2009 U.S. Dist. LEXIS 30567 (D. Conn. Apr. 9, 2009) .......................17, 28

*Doe v. Abrahante,*
  No. CV 97040311 S, 1998 Conn. Super. LEXIS 1177 (Super. Ct. Apr. 28, 1998) ..........11, 20

*Elbert v. Conn. Yankee Council, Inc.,*
  No. CV 01 0456879, 2004 Conn. Super. LEXIS 1924 (Super. Ct. July 16, 2004)................16

*Fischer v. Rivest,*
  No. X03CV000509627S, 2002 Conn. Super. LEXIS 2778 (Super. Aug. 15, 2002) .............19

*Foster v. Westbrook Lodge of Elks # 1784,*
  No. CV065001631S, 2007 Conn. Super. LEXIS 972 (Super. Ct. Apr. 11, 2007) .................11

*Galland v. Bishop,*
  No. 088568, 2001 Conn. Super. LEXIS 44 (Super. Ct. Jan. 9, 2001) ....................................25

*Gonzalez v. Univ. Sys. of N.H.,*
  No. 451217, 2005 Conn. Super. LEXIS 288 (Super. Ct. Jan. 28, 2005) .................................24

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,*
  255 Conn. 20 (2000) ...........................................................................................................22

*Leary v Wesleyan Univ.,*
  No. CV055003943, 47 Conn. L. Rptr. 340 (Super. Ct. Mar. 10, 2009) ..................................23

*Maisano v. Congregation Or Shalom,*
  No. NHCV07402717S, 2009 Conn. Super. LEXIS 215 (Super. Ct. Jan. 26, 2009) ..............11

*Malin v. XL Capital Ltd.,*
  499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 Fed. App'x 400 (2d Cir. 2009) ...................9

*Missel v. Cnty. of Monroe,*
  531 Fed. App'x 543 (2d Cir. 2009) .......................................................................................8

*Murdock v. Croughwell,*
  268 Conn. 559 (2004) ..................................................................................................passim

*Pawlowski v. Delta Sigma Phi,*
  No. CV030484661S, 2009 Conn. Super. LEXIS 170 (Super. Ct. Jan. 22, 2009) ..................23

*Perodeau v. City of Hartford,*
  259 Conn. 729 (2002) ....................................................................................................16, 17

*Roberts v. Circuit-Wise, Inc.,*
  142 F. Supp. 2d 211 (D. Conn. 2001)...................................................................................17

*Roe v. Bridgestone Corp.,*
  492 F. Supp. 2d 988 (S.D. Ind. 2007)...................................................................................30

*Seguro v. Cummiskey,*
  82 Conn. App. 186 (2004) ........................................................................................9, 10, 15

*Sherwood v. Danbury Hosp.,*
  278 Conn. 163 (2006)...........................................................................................................22

*Wesley v. Schaller Subaru, Inc.*,
   277 Conn. 526 (2006) ...................................................................................................25, 26

*Whitfield v. O'Connell*,
   402 Fed. App'x 563 (2d Cir. 2010) .................................................................................8, 24

**STATUTES**

18 U.S.C. § 1591 ...................................................................................................................29, 30

18 U.S.C. § 1595 ...................................................................................................................29, 30

18 U.S.C. § 1596 .........................................................................................................................30

18 U.S.C. § 2423(b) ................................................................................................................4, 29

42 U.S.C. § 14503(a)(1) ..............................................................................................................18

Conn. Gen. Stat. § 33-1080(b)......................................................................................................15

Conn. Gen. Stat. § 52-557m .........................................................................................................18

Fed. R. Civ. P. 8............................................................................................................................9

Fed. R. Civ. P. 12(b)(6) ................................................................................................................8

**OTHER AUTHORITIES**

Douglass B. Wright, John R. FitzGerald & William L. Ankerman, *Connecticut Law of
   Torts* § 63 (3d ed.) ..................................................................................................................25

Restatement (Second) of Agency § 1 cmt. b. ..............................................................................26

Restatement (Second) of Torts .......................................................................................10, 13, 16

Restatement (Second) of Torts § 314A(1)...................................................................................13

Restatement (Second) of Torts § 315(b)......................................................................................13

Restatement (Second) of Torts § 317 .....................................................................................10, 14

Restatement (Second) of Torts §§ 316 through 319.....................................................................13

Defendant Fairfield University respectfully submits this memorandum of law in support of its omnibus motion to dismiss the operative complaints (the "Complaints") in these procedurally consolidated actions.

## PRELIMINARY STATEMENT

Plaintiffs in these actions (collectively, "Plaintiffs") allege that they are victims of sexual abuse by Douglas Perlitz ("Perlitz"), the former director of Project Pierre Toussaint ("PPT") in Cap-Haitien, Haiti, who has admitted that he sexually molested minor children at PPT and is now in jail. The issue on this motion is whether Plaintiffs can recover damages for their alleged injuries from Fairfield University, which did not employ Perlitz and had no knowledge or reason to know of Perlitz's criminal activity. Under settled principles of Connecticut law, the answer is no.

PPT was a residential school in Haiti that was organized to provide services to poor children who lacked homes and regular meals. The project was managed and directed by Haiti Fund, Inc. ("Haiti Fund"), a nonprofit corporation whose chairman and senior officer was Father Paul E. Carrier ("Father Carrier"), who also was an employee of the University. According to the Complaints, Father Carrier was aware of Perlitz's criminal conduct and aided and abetted him both in committing that conduct and in concealing it from others. Plaintiffs allege that the University promoted and supported PPT, including by helping PPT raise money, placing persons in leadership positions of Haiti Fund and supplying student volunteers to PPT through its Mission Volunteers program.

As shown below, the University's alleged activities in promoting and supporting PPT do not impose on the University a duty of care (much less a fiduciary duty) to Plaintiffs with respect to Perlitz's misconduct. Indeed, if such allegations were sufficient to state a claim, organizations

would be discouraged from supporting worthy charitable causes, including causes championed by individuals within the organization, lest they become responsible for misconduct engaged in without their knowledge by employees of the charitable entities.

But even if such a duty were to exist, the Complaints fail as a matter of law for a simple reason: Plaintiffs fail to allege that the University was on notice – much less had actual knowledge – of Perlitz's misconduct. Plaintiffs do not allege that Father Carrier or anyone else provided information that would have alerted the University to Perlitz's criminal conduct. To the contrary, Plaintiffs allege that Father Carrier aided and abetted Perlitz in his efforts to <u>conceal</u> that conduct, including from the University.

Lacking any basis to allege that the University knew or should have known of Perlitz's criminal conduct, Plaintiffs attempt to shift the focus to the University's alleged failure to supervise Father Carrier, who in turn had a duty to supervise Perlitz. This strained theory – that the University failed to supervise the supervisor – fails for two reasons. First, Father Carrier's duty to supervise Perlitz arose from his service on the board and as an officer of Haiti Fund, the separate legal entity that managed and directed PPT. Thus, the University had no authority or duty to supervise him acting in that capacity. Second, even assuming that the University had a duty to supervise Father Carrier with respect to his work for Haiti Fund, Plaintiffs fail to allege any facts that would have put the University on notice that Father Carrier was not competent to carry out his duties to Haiti Fund or PPT, including his duty to supervise Perlitz. In the Complaints, Plaintiffs make a single allegation that provides the sole purported basis for such notice – that in about 1988 (nine years before the founding of PPT) Father Carrier engaged in a sexual relationship with a freshman at the University. That allegation alone would not have been reason to suspect that Father Carrier would have been unable to serve at Haiti Fund or in that

capacity would tolerate criminal child abuse by Perlitz. But critically, Plaintiffs cannot and do not allege that the University had knowledge of the alleged sexual relationship.

For the reasons set forth below, none of the five claims asserted against the University withstands legal scrutiny, and the Complaints should be dismissed against the University in their entirety.

## ALLEGATIONS OF THE COMPLAINTS

### A.    Background

Perlitz obtained funding from the Order of Malta in about 1997 to start and operate PPT, a school for boys in Cap-Haitien, Haiti. (Compl. ¶ 27.)[1] Perlitz served as director of PPT. (Compl. ¶ 2.) PPT was funded, managed, controlled and directed by Haiti Fund, a Connecticut corporation. (Compl. ¶ 10.) At all relevant times, the Chairman and President and/or Vice President of Haiti Fund was Father Carrier, a religious priest who also was University Chaplain/Director of Campus Ministry and Community Service of Fairfield University. (Compl. ¶ 17.)

While serving as director of PPT, Perlitz sexually molested minor boys who attended PPT, allegedly including Plaintiffs. (Compl. ¶ 3.) Plaintiffs allege that, at various times, Perlitz engaged in illicit sexual conduct with them, beginning when each was under the age of eighteen.[2]

---

[1] All paragraph citations are to the Second Amended Complaint filed in the lead case, *Jean-Charles v. Perlitz et al.* (3:11-cv-614) (JCH) ("Compl."), except where otherwise noted. The underlying factual allegations and the legal claims asserted by the Plaintiffs against the University are identical. The allegations in the Complaints differ only with respect to the specific abuse allegations pertaining to each individually-named Plaintiff, as a result of which there are slight variations in the paragraph numbering among the Complaints.

[2] See Compl. ¶¶ 65-67; Alcime, ¶¶ 65-73; Baptiste, ¶¶ 65-73; Belonne, ¶¶ 65-73; Cadet, ¶¶ 65-75; Dorsainvil, ¶¶ 65-74; Dorvil, ¶¶ 65-73; Eugene, ¶¶ 65-73; Fils-Aime, ¶¶ 65-73; Gedeus, ¶¶ 65-74; Hedouville, ¶¶ 65-73; Francilien Jean-Charles, ¶¶ 65-73; Legrand, ¶¶ 65-75; Mathieu, ¶¶ 65-73; Mesamour et al., Third Amended Compl., ¶¶ 65-83; Mesidor, ¶¶ 65-74;

Perlitz was adjudged guilty on one count of violating 18 U.S.C. § 2423(b), travel with intent to engage in illicit sexual conduct, on December 23, 2010. (Compl. ¶ 9.)[3] At sentencing, the government alleged, and Perlitz did not dispute, that he had engaged in sexual conduct with at least eight underage boys at Project Pierre Toussaint. (*USA v. Perlitz*, Docket No. 3:09-CR-00207-JBA-1, Docket No. 93.) The record, however, did not identify the specific victims. Perlitz was sentenced to a prison term of 19 years and 7 months. (*Id.*)

## B.    Allegations Against Fairfield University

Fairfield University is a Connecticut corporation (Compl. ¶ 11) which operates a private, coeducational institution of higher learning in Fairfield, Connecticut.[4]

---

Franklyn Pierre, First Am. Compl., ¶¶ 65-73; Robens Pierre, ¶¶ 65-73; Rosanne, ¶¶ 65-73; and Smith, ¶¶ 65-74.

[3] Judgment entered on December 23, 2010, rather than on December 21, 2010 as erroneously alleged in the Complaint. *See USA v. Perlitz*, Docket No. 3:09-CR-00207-JBA-1, Docket No. 93.

[4] Plaintiffs repeatedly and erroneously allege that the University is operated by the New England Jesuit Order. (*See, e.g.*, Compl. ¶¶ 33, 34.) Although that allegation appears irrelevant to any claim against the University, we note that the University is run by an independent Board of Trustees and is not operated by the New England Jesuit Order.

### 1.     The University's Relationship With PPT

Fairfield University, along with Father Carrier and others, assisted Perlitz with his efforts

to obtain funding from the Order of Malta to start and operate PPT in about 1997, and to obtain

additional funding to expand PPT to include a residential facility referred to as the Village in

about 1999.  (Compl. ¶¶ 27, 28.)  Over the years, over $600,000 was raised for Haiti Fund at

fundraising events held at the University, and the University also directly funded Haiti Fund with

$51,000.  (Compl. ¶ 33.)  Between 1997 and 2006, it also paid Father Carrier $120,500, some or

all of which may have been used to support Father Carrier's activities with PPT.  (Compl. ¶ 34.)

In addition to these funding activities, University student volunteers went to PPT through

its Mission Volunteers program.  (Compl. ¶ 31.)  The University promoted PPT as a mission in

which Fairfield University students or prospective students could participate, and marketed PPT

as a program to attract prospective students to the University.  (Compl. ¶ 37.)

Plaintiffs allege that the University "had placed employees, officers or agents of

Defendant Fairfield University in management or leadership positions of Defendant Haiti Fund,

Inc."  (Compl. ¶ 14.)  Plaintiffs fail to allege how the University "placed" such persons in

positions of Haiti Fund, fail to identify any such employees, officers or agents, and fail to offer

any reason why that conduct would give rise to any duty on the part of the University with

respect to Plaintiffs.

### 2.     The University's Relationship With Perlitz

Plaintiffs do not allege that Perlitz was an employee of the University or had any

contractual relationship with the University.  Notwithstanding that failure, Plaintiffs summarily

allege that "Defendant Fairfield University hired Perlitz in connection with PPT and retained him

during the relevant time period."  (Compl. ¶ 13.)  It is clear on the face of the Complaints,

however, that Perlitz, as director of PPT, was subject to the authority and supervision of Haiti

Fund, which "managed, controlled and directed Project Pierre Toussaint." (Compl. ¶ 10.)

Indeed, Plaintiffs acknowledge as much when they allege that the Haiti Fund and Father Carrier,

who served as Chairman and President and/or Vice President of Haiti Fund, each "hired" and

"retained" Perlitz in connection with PPT. (Compl. ¶¶ 12, 17.)

## 3.    The University's Lack of Knowledge of Perlitz's Misconduct

Plaintiffs do not allege that the University knew of Perlitz's misconduct until long after

the alleged abuse in this case. Although Plaintiffs allege that Father Carrier "became aware that

Perlitz was engaged in conduct that endangered minor boys participating in PPT" (Compl. ¶ 41),

they do not allege that Father Carrier reported that information to anyone at the University. To

the contrary, they allege that Father Carrier "aided and abetted Perlitz . . . in Perlitz's efforts to

conceal his sexual abuse of minors participating in PPT." (*Id.*)

Plaintiffs' effort to establish notice to the University is based on their allegation that

student volunteers at PPT may have learned information that should have made them suspicious

of Perlitz. Specifically, Plaintiffs allege that:

American staff members from PPT, including volunteers from Fairfield
University . . . resided in Perlitz's house in Bel Air. These staff members saw
minor boys in the evening and then saw those same boys in Perlitz's Bel Air
house early the next morning. These staff members further saw boys in Perlitz's
bedroom in Perlitz's Bel Air house during the day, and at bedtime saw boys go to
sleep in Perlitz's bedroom.

(Compl. ¶ 53.) Plaintiffs do not identify any of these University volunteers, do not allege

whether these events occurred before or after the alleged abuse in this case, and do not allege that

any student had cause to believe a child had been abused. But even assuming that University

students made these observations and had or should have had suspicions of Perlitz, Plaintiffs do

not allege that any student reported those suspicions to anyone at the University. Indeed,

Plaintiffs do not even allege that any student brought them to the attention of Father Carrier. (*See* Compl. ¶ 57 (""If Father Carrier . . . learned of the abuse from the numerous staff persons who knew about it, including American staff persons and volunteers . . . . (emphasis added)).)

Plaintiffs also allege that the University should have been on notice "that Father Carrier was a person of bad character who could not maintain nor understand appropriate boundaries with vulnerable individuals." (Compl. ¶ 25.) That allegation, in turn, is based solely on Plaintiffs' allegation that in about 1988 Father Carrier "engaged in a sexual relationship with a freshman at Fairfield University." (*Id.*) Plaintiffs do not (and cannot) allege, however, that the University had knowledge of any affair between Father Carrier and a student at the University.

## C.     Claims Against Fairfield University[5]

Based on these allegations, Plaintiffs purport to assert five claims against the University:

(1) that the University and other defendants negligently hired, retained, directed and supervised Perlitz (Fifth Claim for Relief);

(2) that the University and other defendants negligently hired, retained, directed and supervised Father Carrier (Sixth Claim for Relief);

(3) that the University and other defendants breached a fiduciary duty to Plaintiffs (Seventh Claim for Relief);

---

[5] The numbered claims for relief against the University are identical across all Complaints.

-7-

(4) that the University and other defendants are vicariously liable for Perlitz's sexual molestation of Plaintiffs (Eighth Claim for Relief); and

(5) that the University and other Defendants are liable to Plaintiffs under 18 U.S.C. § 1595 (Twelfth Claim for Relief).

All of Plaintiffs' claims against the University are legally insufficient and must be dismissed.

## ARGUMENT

## I.     THE APPLICABLE LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitfield v. O'Connell*, 402 Fed. App'x 563, 565 (2d Cir. 2010) (internal quotation marks and citation omitted). Factual allegations in the complaint must be enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Although a court must "accept as true all factual allegations in a complaint, this tenet is 'inapplicable to legal conclusions.'" *Whitfield*, 402 Fed. App'x at 565 (quoting *Iqbal*, 129 S. Ct. at 1949-50). The Federal Rules do not "require courts to credit a complaint's conclusory statements without reference to its factual context," *Iqbal*, 129 S. Ct. at 1954, or "[t]hreadbare

-8-

recitals of the elements of a cause of action, supported by mere conclusory statements," *id.* at

1949; *see also Missel v. Cnty. of Monroe*, 531 Fed. App'x 543, 545 (2d Cir. 2009) ("[L]egal

conclusions in the complaint are not factual allegations entitled to a presumption of truth, and a

complaint that merely recites the elements of a cause of action without factual support is

insufficient."); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 128 (D. Conn. 2007), *aff'd*, 312

Fed. App'x 400 (2d Cir. 2009) ("The court need not accept . . . mere conclusions of law or

unwarranted deductions . . . ." (internal quotation marks and citation omitted)). Similarly, the

Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal*, 129 S. Ct. at 1949.

## II.     THE FIFTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD UNIVERSITY FOR NEGLIGENT HIRING, RETENTION, DIRECTION OR SUPERVISION OF PERLITZ.

### A.      Fairfield University Did Not Employ Perlitz.

Plaintiffs' claims against Fairfield University for the negligent hiring, retention, direction

and supervision of Perlitz fails because the University did not employ Perlitz, and thus had no

duty of care to Plaintiffs with respect to Perlitz's hiring or retention.

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are

well established:  duty; breach of that duty; causation; and actual injury.  Duty is a legal

conclusion about relationships between individuals made after the fact, and [is] imperative to a

negligence cause of action.  Thus, there can be no actionable negligence unless there exists a

cognizable duty of care." *Murdock v. Croughwell*, 268 Conn. 559, 566 (2004) (quoting *Fraser v.

United States,* 236 Conn. 625, 632 (1996) (ellipses omitted)); *see also Seguro v. Cummiskey*, 82

Conn. App. 186, 192 (2004) (citing *Stokes v. Lyddy*, 75 Conn. App. 252, 257 (2003)).

The Connecticut courts have recognized that an employer owes a limited duty of care to third parties with respect to the hiring, retention and supervision of an employee. *See, e.g., Seguro*, 82 Conn. App. at 191; *Chylinski v. Bank of Am., N.A.*, 630 F. Supp. 2d 218, 221 (D. Conn. 2009) (Hall, J.). That limited duty is an exception to the general rule that, absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another. *Murdock*, 268 Conn. at 566; *Seguro*, 82 Conn. App. at 193 (quoting *Fraser*, 236 Conn. at 632-33 (1996) and citing Restatement (Second) of Torts § 315) (1965)). In recognizing the limited duty, the Connecticut courts have followed the Restatement (Second) of Torts, which identifies the master-servant relationship as a "special relationship" giving rise to a limited duty of care. *See* Restatement (Second) of Torts § 317; *see also* Point III(A) *infra*.

A prerequisite to the duty, however, is that the person who committed the tort (*i.e.*, Perlitz) must be an employee of the defendant (*i.e.*, Fairfield University). In *Chylinsky*, this Court, citing applicable state court decisions, set forth the elements of claims for negligent hiring, supervision or retention. As the Court's discussion makes clear, each such claim is premised on the employer-employee relationship. Thus, in order to establish a claim of negligent hiring, the plaintiff must plead and prove that he was "injured by <u>an employer's</u> own negligence in failing to select an <u>employee</u> fit or competent to perform the services of employment." 630 F. Supp. 2d at 221 (quoting *Maisano v. Congregation Or Shalom*, No. NHCV07402717S, 2009 Conn. Super. LEXIS 215, at *17 (Super. Ct. Jan. 26, 2009)) (emphasis added). In order to establish a claim of negligent supervision, the plaintiff must plead and prove that he suffered an injury "'due to the defendant's failure to supervise an <u>employee</u> whom the defendant had a duty to supervise.'" *Id.* (quoting *Abate v. Circuit-Wise, Inc.*, 130 F. Supp. 2d 341, 344 (D. Conn. 2001)) (emphasis added). In order to establish a claim of negligent retention, the plaintiff must

plead and prove that "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness and the employer fails to take further action." *Id.* (emphasis added) (quoting *Doe v. Abrahante*, No. CV 97040311 S, 1998 Conn. Super. LEXIS 1177, at \*3-4 (Super. Ct. Apr. 28, 1998)) (emphasis added).[6]

Here, Plaintiffs summarily allege that the University "hired" and "retained" Perlitz, but *Iqbal* requires that that allegation be considered with reference to its factual context. *Iqbal,* 129 S. Ct. at 1954. Plaintiffs allege no employer-employee relationship between Fairfield University and Perlitz. *See Maisano*, 2009 Conn. Super. LEXIS 215, at \*18-19 (granting motion to strike negligent hiring claim because "there is no employment relationship between the parties or other legally recognized special relationship"); *Foster v. Westbrook Lodge of Elks # 1784*, No. CV065001631S, 2007 Conn. Super. LEXIS 972, at \*17 (Super. Ct. Apr. 11, 2007) (granting motion to strike negligent retention claim against the Elks for conduct of one of its members because "[t]here is no allegation in the complaint that [defendant] was an employee of the Elks"). Reviewing Plaintiffs' allegations in context, and drawing on common sense, *Iqbal*, 129 S. Ct. at 1950, the only reasonable conclusion from Plaintiffs' allegations is that Haiti Fund was the entity that employed Perlitz. Haiti Fund was the entity that "managed, controlled and directed" PPT (Compl. ¶ 10), and as such the entity with the authority to employ and retain Perlitz. This is consistent with Plaintiffs' allegation that Haiti Fund "hired Perlitz and retained him throughout the relevant time period." (*Id.*)

---

[6] We are not aware of any Connecticut authority that recognizes a claim for "negligent direction" separate and apart from a claim of negligent supervision.

Thus, Plaintiffs have failed adequately to plead that Fairfield University had a duty of care with respect to the hiring, supervision or retention of Perlitz, and the claim must be dismissed.

**B.     Plaintiffs Fail To Allege Any Breach Of The Purported Duty.**

Plaintiffs' claim for negligent hiring, retention, direction and supervision of Perlitz also fail because Plaintiffs fail to allege that the University acted negligently. The existence of a duty, of course, is just one element of a negligence claim. A plaintiff also must plead breach of that duty. Plaintiffs fail to allege any actionable conduct or omission by the University with respect to the hiring, supervision or retention of Perlitz. Plaintiffs do not allege that the University became aware or should have become aware of Perlitz's misconduct in his capacity as director of Project Pierre Toussaint. Nor do Plaintiffs allege any facts that would establish that the University had any supervisory authority over Perlitz. For this additional reason, the Court should dismiss the Fifth Claim as to the University. *See Chylinski*, 630 F. Supp. 2d at 221.

**III.     THE SIXTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD UNIVERSITY FOR NEGLIGENT HIRING, RETENTION, DIRECTION OR SUPERVISION OF FATHER CARRIER.**

The Sixth Claim purports to state a claim against Fairfield University for negligent hiring, retention, direction and supervision of Father Carrier. This claim must be dismissed because the Complaints fail to allege facts sufficient to establish that the University owed a duty to Plaintiffs with respect to Father Carrier's alleged tortious conduct, which took place off University property and in Father Carrier's capacity as Chairman and officer of Haiti Fund. The claim also fails because Plaintiffs do not allege any conduct by the University that was a breach of the alleged duty.

A.    **Fairfield University Owed No Duty To Supervise Father Carrier In Connection With The Alleged Misconduct.**

1.    **The Allegations Do Not Fall Within The Narrow Scope Of Circumstances Where A Party Has A Duty To Prevent Harm To Others.**

Connecticut follows the Restatement (Second) of Torts in determining whether a party has a duty of care to protect others from harm resulting from the acts of a third person. *Murdock*, 268 Conn. at 566-71. Section 314 of the Restatement (Second) sets forth the general rule that a party has no duty to aid or protect another person. Section 315 sets forth a limited exception to that rule.[7]  Under Section 315, an actor may have a duty to control the conduct of a third person as to prevent him from causing physical harm to another if there is a special relation between the actor (*i.e.*, the University) and the third person (*i.e.*, Father Carrier) which imposes a duty upon the actor to control the third person's conduct. *Id.* § 315(a).[8]  The "special relationships" between the actor and the third person that may support a duty are set forth in Sections 316 through 319 of the Restatement (Second). Three of these provisions — Sections 316, 318 and 319

---

[7] *See Murdock*, 268 Conn. at 567 (§ 315 "is an exception to the general rule that there is no duty to control the conduct of a third person. The comments to § 315 make this point explicitly, stating that 'the rule stated in this Section is a special application of the general rule stated in § 314.'") (quoting Restatement (Second) of Torts § 315 cmt. a.).

[8] The Restatement (Second) also imposes a duty where a special relation exists between the actor (*i.e.*, the University) and the other (*i.e.*, Plaintiff) that gives to the other a right of protection. Restatement (Second) of Torts § 315(b). The special relationships between the actor and the other that may support a duty are set forth in Section 314A of the Restatement (Second) and have no conceivable application here. *See* Restatement (Second) of Torts § 314A(1) (duty of common carrier to passengers); *id.* § 314A(2) (duty of innkeeper to guests); *id.* § 314A(3) (duty of possessor of land to invitees); *id.* § 314A(4) (duty of one who takes custody of another under certain circumstances; *see also id.* § 320 (duty of certain persons exercising custodial control over an individual).

-13-

– describe relationships that are far off point.[9]  The only such possible relationship applicable

here is the master-servant, or employer-employee, relationship set forth in Section 317, which

provides:

> A master is under a duty to exercise reasonable care so to control his servant
> while acting outside the scope of his employment as to prevent him from
> intentionally harming others or from so conducting himself as to create an
> unreasonable risk of bodily harm to them, if
>
> (a)    the servant
>
>        (i)    is upon the premises in possession of the master or upon which the
> servant is privileged to enter only as his servant, or
>
>        (ii)    is using a chattel of the master, and
>
> (b)    the master
>
>        (i)    knows or has reason to know that he has the ability to control his
> servant, and
>
>        (ii)    knows or should know of the necessity and opportunity for
> exercising such control.

Restatement (Second) of Torts § 317.  By its terms, Section 317 imposes a duty on an employer

to control the conduct of an off-duty employee "when the conduct complained of occurs on the

employer's premises or utilizes a chattel of the employer's, *if* the employer knows or has reason

to know that he can control the employee *and* recognizes the necessity of doing so." *Murdock*,

268 Conn. at 570 (emphasis in original).

    In *Murdock*, the Court applied Section 317 to hold that a Hartford police officer who was

injured in a physical altercation with another off-duty officer in a restaurant parking lot did not

---

[9] Section 316 imposes a duty on a parent to prevent his minor child from intentionally
harming a third party; Section 318 imposes a duty on the possessor of land or chattels to control
the conduct of a licensee; and Section 319 requires those exercising custodial control over an
individual, such as a sheriff or warden, to prevent the individual from causing harm to a third
party. *See Murdock*, 268 Conn. at 568-69.

have a negligence claim against the City of Hartford or the chief of police. As the Court explained, "§ 317 does not apply in the present case because the altercation between the plaintiff and [the off-duty officer] occurred off department premises and did not involve any chattel of [the chief of police] or the city." *Id.*

Applying the same analysis, Plaintiffs' claims against the University must be dismissed. The alleged tortious activity did not occur on the University's premises. The Complaints do not allege that Father Carrier acted within the scope of his employment with respect to the alleged misconduct. Rather, Father Carrier was Chairman and President of Haiti Fund (Compl. ¶ 17), a corporation separate and distinct from the University which funded, managed, controlled and directed Project Pierre Toussaint (Compl. ¶ 10). The board of Haiti Fund – and not Fairfield University – had the authority and duty to supervise and control Haiti Fund's officers, including Father Carrier. *See* Conn. Gen. Stat. § 33-1080(b) (all powers of a non-stock corporation shall be exercised by or under the authority of the corporation's board of directors); *id.* § 1002(2) (board of directors is the "group of persons vested with management of the affairs of the corporation"); *see also Beardslee v. Disposal*, No. CV 960324450S, 1999 Conn. Super. LEXIS 2999, at \*5 (Super. Ct. Nov. 4, 1999) (stating that "corporations are separate legal entities, with separate rights and powers conferred and duties and liabilities imposed by law").

Finally, Plaintiffs do not adequately plead the further requisite fact that the University could control Father Carrier in his capacity as Chairman and President of Haiti Fund and recognized the necessity of doing so. *Compare Seguro*, 82 Conn. App. at 194 & n.8 (tavern owner liable for failing to supervise employee who became intoxicated while working as the bartender, and distinguishing Section 317 because "[t]he negligence in question did not occur off-site, but rather involved the actions and inactions of the defendant in failing to supervise [the

-15-

employee] as to consumption of intoxicating liquor on the job"). For all these reasons, Plaintiffs

do not adequately allege that the University had a duty to control the conduct of Father Carrier in

connection with Father Carrier's meetings with Perlitz.

### 2.   Plaintiffs' Allegations Do Not Meet The Foreseeability and Policy Requirements For Imposition Of A Duty.

Not only is the scope of the University's duty in this case proscribed by specific

application of the Restatement (Second) of Torts principles laid out in *Murdock*, but the same

result is reached under general principles of Connecticut negligence law. As the Supreme Court

has explained:

> Duty is a legal conclusion about relationships between individuals, made after the
> fact, and imperative to a negligence cause of action. The nature of the duty, and
> the specific persons to whom it is owed, are determined by the circumstances
> surrounding the conduct of the individual. . . . Although it has been said that no
> universal test for [duty] has ever been formulated . . . our threshold inquiry has
> always been whether the specific harm alleged by the plaintiff was foreseeable to
> the defendant. The ultimate test of the existence of the duty to use care is found
> in the foreseeability that harm may result if it is not exercised.

*Perodeau v. City of Hartford*, 259 Conn. 729, 754 (2002) (quoting *Jaworski v. Kiernan*, 241

Conn. 399, 405 (1997) (internal citations omitted); *see also Elbert v. Conn. Yankee Council, Inc.*,

No. CV 01 0456879, 2004 Conn. Super. LEXIS 1924 at *38-39 (Super. Ct. July 16, 2004)

("Whether the claim is for negligent hiring, negligent supervision or negligent retention, a

plaintiff must allege facts that support the element of foreseeability.").

Foreseeability alone is not sufficient, however. "Many harms are quite literally

foreseeable, yet for pragmatic reasons, no recovery is allowed." *Perodeaux*, 259 Conn. at 756

(quoting *Jaworski*, 241 Conn. at 406). The Court has identified four factors that should be

considered in determining whether a legal duty should be imposed: "(1) the normal expectations

of the participants in the activity under review; (2) the public policy of encouraging continued

vigorous participation in the activity, while protecting the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Perodeaux*, 259 Conn. at 756-57 (citing *Jaworski*, 241 Conn. at 407).

Plaintiffs' claim here fails the foreseeability test and would be inconsistent with application of the factors identified by the Supreme Court. First, Plaintiffs do not adequately allege that the alleged harm was foreseeable. A "defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Roberts v. Circuit-Wise, Inc.*, 142 F. Supp. 2d 211, 214 (D. Conn. 2001). Plaintiffs allege that Father Carrier engaged in tortious conduct because he allegedly "aided and abetted" Perlitz in Perlitz's efforts to sexually abuse minor boys participating in Project Pierre Toussaint and in Perlitz's efforts to conceal such abuse. (Compl. ¶ 41.) The University had no reason to foresee that the director of Project Pierre Toussaint selected by Haiti Fund would engage in criminal misconduct, or that Father Carrier – acting outside the scope of his employment with the University – allegedly would participate in a cover-up of that misconduct. Simply put, Plaintiffs fail to plead any facts from which one could reasonably infer that the University knew or should have known of any propensity of Father Carrier to engage in such alleged conduct, either when it hired Father Carrier or at any time during his employment by the University. That failure requires dismissal of the claim. *See Dignan v. McGee*, No. 07-cv-1307, 2009 U.S. Dist. LEXIS 30567, at *19 (D. Conn. Apr. 9, 2009) (Hall, J.) (dismissing negligent supervision claim because "there is no evidence on the face of the Amended Complaint that the defendant corporations knew or should have known of [defendant's] 'propensity to engage' in sexual abuse"); *Baker v. Spinney*, No. CV 07 5001737, 2008 Conn. Super. LEXIS 1424 (Super. Ct. June 2, 2008)

-17-

(dismissing negligent hiring, retention and supervision claims finding that it was not foreseeable that a handyman who had prior convictions for burglary, larceny and drug possession would commit such brutal and violent acts as kidnapping, rape and murder).

Second, imposition of a duty on the University to supervise Father Carrier in his role as a volunteer officer of Haiti Fund would be inconsistent with the public policy and other considerations identified by the Supreme Court. Plaintiffs do not allege any facts that would support a legitimate expectation that the University would protect him from criminal conduct by Perlitz. Exposing the University to liability on the facts alleged here would unnecessarily increase litigation and would undermine fundamental public policy. Plaintiffs' claim is founded on the allegation that the University supported and sponsored the activities of Haiti Fund, which operated Project Pierre Toussaint, a residential school providing basic services – such as meals, access to running water for baths and showers, and classroom instruction and sporting activities – to the poorest children of Haiti. (Compl. ¶¶ 14, 31, 33 and 34.) Although Perlitz's conduct was reprehensible, Plaintiffs do not dispute that the project itself served an important and worthy charitable purpose. Many corporations, educational institutions and other organizations support worthwhile charitable endeavors and encourage their employees to become actively involved in those endeavors. This is a worthy endeavor, and finds strong support in public policy.[10] These charitable efforts will be curtailed if an organization, by supporting or sponsoring a charitable project, or by encouraging its employees to seek involvement in charitable activities, assumes liability for misconduct that occurs at the hands of employees of the project or their supervisors.

---

[10] For example, state law and the federal Volunteer Protection Act immunize volunteer directors of a tax-exempt organization from claims for damages so long as the challenged conduct was undertaken in good faith and was not reckless, willful or wanton. *See* Conn. Gen. Stat. § 52-557m; 42 U.S.C. § 14503(a)(1).

Moreover, imposing liability on the University would do little to protect the safety of persons who receive the benefits of these charitable projects, because such safety is far better protected by the managers of the charitable entity. *See Fischer v. Rivest*, No. X03CV000509627S, 2002 Conn. Super. LEXIS 2778, at *20 (Super. Aug. 15, 2002) (granting summary judgment to coach, two hockey associations and city on negligence claim brought by injured hockey player, and upholding liability waiver in part because of the public policy benefit of allowing organizations to provide recreational and sports options to youths without the risk of litigation).[11]

In sum, Plaintiffs have failed to allege facts supporting a duty of the University to Plaintiffs with respect to Father Carrier's conduct as chairman and president of Haiti Fund.

**B.      The Complaints Fail Properly To Allege A Breach Of The Alleged Duty.**

Even if Plaintiffs had adequately alleged facts giving rise to a duty to Plaintiffs with respect to Father Carrier's activities – which they do not – the Sixth Claim would have to be dismissed because it fails to allege that the University acted negligently in hiring, retaining or supervising Father Carrier.

**1.      Negligent Hiring.**

Plaintiffs make no allegation whatever respecting the University's hiring of Father Carrier. Instead, Plaintiffs simply allege that "[d]uring the relevant time period Father Carrier was . . . University Chaplain/Director of Campus Ministry and Community Service of Fairfield University. . . ." (Compl. ¶ 17.) Plaintiffs allege no facts that would support a finding that at the time the University hired Father Carrier he was not "fit or competent to perform the services of employment," much less any reason for the University to know that Father Carrier was not fit or

---

[11] With regard to the final factor (the decisions of other jurisdictions), it is significant that Connecticut law hews closely to the Restatement (Second) which is reflective of law across many jurisdictions and carefully proscribes a person's duty of care to protect others from harm.

competent. *Chylinsky*, 630 F. Supp. 2d at 221; *see Abate*, 130 F. Supp. 2d at 344 (granting

motion to dismiss negligent hiring claim based on "single conclusory statement that defendant

failed to exercise reasonable care in selecting and hiring the male supervisors at their facility");

*Abrahante*, 1998 Conn. Super. LEXIS 1177, at *2-3 (striking negligent hiring claim because

"[n]owhere, even by inference, has the plaintiff sufficiently alleged any particular background or

misconduct, that the movant knew or should have known about Mr. Abrahante from which the

movant knew or should have known that he was reasonably likely to commit the alleged sexual

assault.").

### 2.    Negligent Supervision, Direction or Retention.

Plaintiffs do not allege that the University knew of Perlitz's criminal activities or of

Father Carrier's alleged participation in those activities. To the contrary, Plaintiffs allege that

Father Carrier aided and abetted Perlitz in his "efforts to conceal Defendant Perlitz's sexual

abuse of minors participating in Project Pierre Toussaint. (Compl. ¶ 41.) Father Carrier's

alleged concealment of Perlitz's abusive conduct is fully consistent with the University's <u>lack</u> of

knowledge of improper activity.

Plaintiffs' negligent supervision/retention claim appears to be based solely on the

allegation that "[i]n approximately 1988, Father Carrier, then University Chaplain of Fairfield

University, engaged in a sexual relationship with a freshman at Fairfield University." (Compl. ¶

25.) That sexual relationship, according to Plaintiffs, "should have put Fairfield University on

notice that Father Carrier was a person of bad character who could not maintain nor understand

appropriate boundaries with vulnerable individuals." (*Id.*)

This allegation is insufficient for two reasons. First, Plaintiffs cannot and do not allege

that the University had knowledge of the alleged sexual relationship. Thus, the University had

-20-

no occasion, much less duty, to take action with respect to the allegation. Second, even if the University had become aware of the conduct alleged in the Complaints – that Father Carrier had a sexual relationship with a college student – such information would not as a matter of law have required the University to take action with respect to Father Carrier's work for PPT in Haiti, both for temporal and substantive reasons. The fact that Father Carrier had had an affair with a college student – according to the Complaints, a single incident that occurred nine years before the founding of PPT and a longer time before Perlitz abused any of the Plaintiffs – does not indicate that Father Carrier would, as Plaintiffs allege, tolerate and conceal Perlitz's sexual abuse of minor children.

For the foregoing reasons, the Sixth Count must be dismissed as to Fairfield University.

## IV.   THE SEVENTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD UNIVERSITY FOR BREACH OF FIDUCIARY DUTY.

Plaintiffs' claim against Fairfield University for breach of fiduciary duty fails because Plaintiffs have failed properly to plead that the University owed a fiduciary duty to Plaintiffs or that the University breached any such duty.

### A.   Fairfield University Did Not Owe A Fiduciary Duty to Plaintiffs.

"[I]t is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them." *Biller Assocs. v. Peterken*, 269 Conn. 716, 723 (2004). The question of whether a fiduciary duty exists, in turn, is a question of law. *Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 330 (D. Conn. 2010) (citing *Biller*, 269 Conn. at 721-22). "It is well settled that a fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Id.* (quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 640 (2002)). Although the Connecticut Supreme

Court "has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations . . . [i]n the seminal cases in which [the] court has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 38 (2000) (citations and internal quotation marks omitted). Recognizing that the lack of clear definition should not allow plaintiffs to turn everyday tort or contract actions into breach of fiduciary duty claims, the Court has cautioned that "'[a]lthough we have not expressly limited the application of these traditional principles of fiduciary duty to cases involving only fraud, self-dealing or conflict of interest, the cases in which we have invoked them have involved such deviations.'" *Sherwood v. Danbury Hosp.*, 278 Conn. 163, 196 (2006) (quoting *Murphy v. Wakelee*, 247 Conn. 396, 400 (1998)).

Plaintiffs' claim that the University owed a fiduciary duty to Plaintiffs is based solely on their allegations that the University "knew that PPT, operated, managed and controlled by Defendant Perlitz, was providing services to extremely vulnerable minors in the Republic of Haiti." (Compl.¶ 123); and that the University "sponsored and promoted PPT which the Defendants knew was providing services to extremely vulnerable minors in the Republic of Haiti." (Compl.¶ 124). Those bare allegations fall far short of the facts necessary to establish a fiduciary relationship between the University and Plaintiffs.

First, Plaintiffs' allegations do not establish any relationship between Plaintiffs and the University, much less a special relationship "characterized by a unique degree of trust and confidence between the parties." A school owes no fiduciary duty even to its own students. Thus, in *Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d at 330-31, the Court granted summary judgment on a student's claim for breach of fiduciary duty against the defendants, a boarding

-22-

school and its Head of School, concluding that the school did not owe a fiduciary duty to its

students and that the Head of School also owed no such duty because she had not had

"substantial contact" with the student before the events at issue. In reaching that result, the Court

observed: "The Court's research has not revealed a single case in any state or federal court

within the Second Circuit holding or even suggesting that a secondary school—public or private,

boarding or day-session—or its employees owe a fiduciary duty to its students." *Id.* at 330.

*Accord: Pawlowski v. Delta Sigma Phi*, No. CV030484661S, 2009 Conn. Super. LEXIS 170, at

\*17 (Super. Ct. Jan. 22, 2009) (holding that university has no special relationship with its own

students) (citing *Freeman v. Busch*, 349 F.3d 582, 587 (8th Cir. 2003) ("since the late 1970s, the

general rule is that no special relationship exists between a college and its *own* students because

a college is not an insurer of the safety of its students") (emphasis in original); *Leary v Wesleyan

Univ.*, No. CV055003943, 47 Conn. L. Rptr. 340, 346-47 (Super. Ct. Mar. 10, 2009) (granting

summary judgment and finding there was no fiduciary relationship between the defendant

university and the student plaintiff). Because the University has no fiduciary duty to its own

students as a matter of law, it clearly has no fiduciary duty to a resident of a separate residential

school thousands of miles away in a different country based on the bare allegation that the

University represented that it "sponsored and promoted" the school.

Second, the facts of this case do not demonstrate a relationship of dependency between

the University and the Plaintiffs or the type of fraudulent, self-dealing or conflict of interest

situation in which the Connecticut Supreme Court has recognized a fiduciary relationship. There

is no allegation that influence was acquired and abused by the University or that Plaintiffs'

confidences were reposed in and betrayed by the University. Nor is there any allegation that the

University misused a power differential so as to cause Plaintiffs' injuries, or abused a

-23-

professional relationship of trust and deference. *See, e.g., Gonzalez v. Univ. Sys. of N.H.*, No. 451217, 2005 Conn. Super. LEXIS 288, at \*58 (Super. Ct. Jan. 28, 2005) (applying New Hampshire law to reject a fiduciary duty claim arising out of a college's alleged failure to supervise its cheerleading club in the absence "of a misuse of a power differential . . . or of abuse of a professional relationship of trust and deference").

Thus, Plaintiffs have failed adequately to plead that Fairfield University owed them a fiduciary duty.

**B.     Plaintiffs Have Failed Adequately To Plead A Breach Of Any Purported Fiduciary Duty.**

The Complaints are further bereft of any allegation that Fairfield University engaged in conduct that breached any alleged duty to Plaintiffs. The Complaints do not allege that the University managed or controlled PPT, that the University had any authority to supervise Perlitz, or that the University had any knowledge of Perlitz's misconduct. Thus, even assuming there were some basis to claim that the University owed Plaintiffs a fiduciary duty, Plaintiffs' claim fails because they do not adequately plead a breach of the duty. Plaintiffs' bare assertion that the University and other defendants "each breached their fiduciary duty to the Plaintiff" (Compl. ¶ 125) is insufficient to state a claim. *See Whitfield*, 402 Fed. App'x at 565 (the court need not assume the truth of conclusory statements).

**V.     THE EIGHTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD UNIVERSITY FOR VICARIOUS LIABILITY.**

Plaintiffs contend that the University should be held vicariously liable for the intentional torts committed by Perlitz because, they allege, Perlitz gained the trust and confidence of the Plaintiffs by using the existence of an alleged agency relationship between Perlitz and numerous defendants including the University. (Compl. ¶ 135) This claim fails both because Plaintiffs fail

adequately to allege that Perlitz was an agent of the University and because, even if he were, the University would not be liable for intentional torts committed by Perlitz that were not in furtherance of the University's business.

**A.     The Complaints Do Not Adequately Allege That Perlitz Was An Agent Of Fairfield University.**

The doctrine of vicarious liability is most commonly recognized in agency situations where the master is liable for the torts of the servant committed within the scope of his employment. Sufficient evidence must be produced to warrant the finding of an agency relationship. *See* Douglass B. Wright, John R. FitzGerald & William L. Ankerman, *Connecticut Law of Torts* § 63 (3d ed.), citing *Leary v. Johnson*, 159 Conn. 101 (1970). The existence of agency is ordinarily a question of fact, but if the material facts are uncontested the agency relationship becomes a question of law. *Galland v. Bishop*, No. 088568, 2001 Conn. Super. LEXIS 44, at *7-9 (Super. Ct. Jan. 9, 2001), citing *Hallas v. Boehmke & Dobosz, Inc.*, 239 Conn. 658, 674 (1997).

"[A]gency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . ." *Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526, 543 (2006) (quoting *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 120, 132-34 (1983). The three elements required to show the existence of an agency relationship are: "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." *Id. See also* Restatement (Second) of Agency § 1 cmt. b.

Plaintiffs' assertion that Perlitz acted as agent of the University is based on their summary (and factually unsupported) allegation that the University hired and retained Perlitz,

-25-

and on the additional allegations that the University "had placed employees, officers or agents of

Defendant Fairfield University in management and/or leadership positions of Defendant Haiti

Fund, Inc." and had represented that PPT engaged in activities supported, managed and

sponsored by the University. (Compl. ¶ 132.) Those allegations, even if proved, would not be

sufficient to establish that Perlitz acted as agent of the University in his service as director of

PPT.

As set forth in Section II, above, the Complaints do not sufficiently allege that Perlitz was

an employee of the University. Nor do the Complaints allege the general elements of an agency

relationship. Plaintiffs do not allege that the University ever manifested that Perlitz would act as

its agent, or that Perlitz agreed to act as the University's agent. Nor do Plaintiffs allege that the

University controlled Perlitz's work at PPT. To the contrary, the Complaints make clear that

Perlitz's work was "funded, managed, <u>controlled and directed</u>" by Haiti Fund. (Compl. ¶ 10

(emphasis added).) Assuming that the University "placed" employees, officers or agents of

Fairfield University in management and/or leadership positions of Haiti Fund (Compl. ¶ 132),

any such managers or leaders of Haiti Fund then acted in their capacity as such, subject to the

control and direction of Haiti Fund and its board – not the University.

## B.     Perlitz Was Not Acting Within The Scope Of His Employment And In Furtherance Of Any Business Of Fairfield University.

Plaintiffs' vicarious liability claim against the University also fail not only because

Plaintiffs fail adequately to allege that Perlitz acted as an agent of the University, but also

because Perlitz's tortious conduct in allegedly sexually molesting Plaintiffs was not within the

scope of his employment and in furtherance of the University's business. *See A-G Foods, Inc. v.*

*Pepperidge Farm, Inc.*, 216 Conn. 200, 208 (1990) (the Court has "long adhered to the principle

that in order to hold an employer liable for the intentional torts of his employee, the employee

-26-

must be acting within the scope of his employment and in furtherance of the employer's

business."); *see also Brown v. Housing Auth.*, 23 Conn. App. 624, 628 (1990) ("'A master is

liable only for those torts of his servant which are done with a view of furthering his master's

business within the field of this employment -- for those which have for their purpose the

execution of the master's orders or the doing of the work assigned to him to do.'"); *Abate*, 130 F.

Supp. 2d at 348.

In *A-G Foods*, the plaintiff, the owner of grocery stores, sued Spinelli, a distributor of

Pepperidge Farm bakery goods, for defrauding plaintiff by charging for goods he had not

delivered; and sued Pepperidge Farm under theories of vicarious liability.  Spinelli pleaded guilty

to larceny and paid plaintiff a portion of the amounts stolen pursuant to a restitution order.

Plaintiff also sought to recover against Pepperidge Farm under a vicarious liability theory.  The

principal issue was whether there was sufficient evidence to sustain a jury verdict finding that

Spinelli was acting within the scope of his employment and in furtherance of Pepperidge Farm's

business when he stole from the plaintiff, and thus that Pepperidge Farm was liable.  The trial

court granted judgment notwithstanding the verdict.

The Supreme Court affirmed.  There was no evidence that Pepperidge Farm had

conspired with Spinelli or ratified his actions; and no evidence that Spinelli's thefts were

motivated by an intent to serve Pepperidge Farm's interests.  *A-G Foods*, 216 Conn. at 206.  The

Court found that the trial court had reasonably concluded that Pepperidge Farm had not profited

in any significant or measurable way from the fraud, notwithstanding plaintiff's claim that the

fraud indirectly benefited Pepperidge Farm because the fraudulent sales had the effect to increase

Pepperidge Farm's allocation of shelf space within the stores.  *Id.* at 207-09.  Finally, the Court

agreed with the trial court's rejection of plaintiff's argument that vicarious liability could be

-27-

imposed because the misconduct took place during the hours when Spinelli was engaged in

selling Pepperidge Farm products and was mixed in with legitimate business. It emphasized that

"there was no evidence that Pepperidge Farm knew of Spinelli's fraudulent activity or received

any of the monetary proceeds of Spinelli's fraud." *Id.* at 210.

Plaintiffs' claim here is even weaker than the claim rejected in *A-G Foods* because

Perlitz's criminal conduct was at odds with the University's mission and reasons for supporting

charitable causes, and completely contrary to PPT's purpose of advancing the cause of poor

Haitian children who resided there. There simply are no pleaded facts from which one could

find that Perlitz's sexual molestation of the Plaintiffs was within the scope of Perlitz's

employment and in furtherance of Fairfield University's business. *See Dignan*, 2009 U.S. Dist.

LEXIS 30567, at *17-18 ("the theory of respondeat superior advanced by Dignan failed as a

matter of law . . . because there was no evidence on the face of the Complaint that [defendant]

was acting within the scope of his employment when he committed the alleged sexual abuse").

## VI.   THE TWELFTH CLAIM FAILS TO STATE A CLAIM AGAINST FAIRFIELD UNIVERSITY PURSUANT TO 18 U.S.C. § 1595.

Plaintiffs' final claim against the University is asserted under 18 U.S.C. § 1595, which

provides a civil remedy with respect to criminal violations of United States forced labor and

human trafficking laws. The alleged predicate offense is sex trafficking of children, based on

Plaintiffs' allegation that Perlitz caused Plaintiffs to engage in commercial sex in Haiti, in

violation of 18 U.S.C. § 1591. (Compl. ¶¶ 155-56.)[12]

---

[12] Although Plaintiffs' allegations are assumed as true for purposes of this motion, we
note that Perlitz was convicted of one count of travel with intent to engage in illicit sexual
conduct, in violation of 18 U.S.C. § 2423(b), which is not a predicate offense for purposes of 18
U.S.C. § 1595.

-28-

Section 1595 provides:

> (a) An individual who is <u>a victim</u> of a violation of this chapter <u>may bring a civil action against</u> the perpetrator (or <u>whoever knowingly benefits</u>, financially or by receiving anything of value <u>from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter</u>) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

(Emphasis added.) Thus, the statute imposes liability not only on the perpetrator (here, Perlitz) but also on persons who knowingly benefit from participation in a "venture" (here, PPT) that engages in predicate criminal conduct. Application of the statute is illustrated by *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 684-85 (S.D. Tex. 2009), where the court sustained a claim based on allegations that the defendant corporation participated and knowingly benefitted from a venture which profited by hiring forced labor to provide services at military bases in Iraq, by misleading and deceiving the victims into working in a dangerous area, holding them in a dark room, taking away their passports, and transporting them against their will along a knowingly dangerous route.

Here, by contrast, the venture itself (PPT) was not engaged in unlawful activity (sex trafficking). Notwithstanding Plaintiffs' summary allegation that "PPT, through Perlitz, was engaged in activities in violation of 18 U.S.C. § 1591" (Compl. ¶ 157), there is no allegation that Perlitz's criminal conduct in any way furthered the project's purpose, or that anyone other than Perlitz "benefitted" from the abuse. But even if there were a basis for imputing Perlitz's criminal conduct to PPT, Plaintiffs' claim against the University nonetheless would fail because Plaintiffs fail to plead facts sufficient to establish the independent element of 18 U.S.C. § 1595 that the University "knew or should have known" that PPT was engaged in sex trafficking.[13]

---

[13] There also is an issue whether 18 U.S.C. § 1595 can be applied to impose liability on the University for conduct that occurred outside of the United States. *See Roe v. Bridgestone*

-29-

**CONCLUSION**

For the reasons set forth above, the Court should dismiss the Complaints against Fairfield

University in their entirety.

DEFENDANT,
FAIRFIELD UNIVERSITY

By: /s/ Stanley A. Twardy, Jr.
       Stanley A. Twardy, Jr. (ct 05096)
       Thomas D. Goldberg (ct 04386)
       Jaclyn K. Leung (ct 27399)
       Day Pitney LLP
       One Canterbury Green
       Stamford, CT  06901-2047
       Tel: (203) 977-7300
       Fax: (203) 977-7301
       E-mail: satwardy@daypitney.com
       E-mail: tgoldberg@daypitney.com

       Its Attorneys

---

*Corp.*, 492 F. Supp. 2d 988, 999-1000 (S.D. Ind. 2007) (no extraterritorial application). In 2008,
Congress enacted 18 U.S.C. § 1596 to provide that the criminal statutes apply where the alleged
offender is a U.S. national. At least one court has held that this provision applies retroactively
and permits claims under 18 U.S.C. § 1595 based on extraterritorial conduct even if that conduct
occurred prior to 2008. *Adhikari*, 697 F. Supp. 2d at 683-84.

## CERTIFICATION OF SERVICE

I hereby certify that on January 30, 2012, a copy of the foregoing Fairfield University's Memorandum of Law In Support Of Its Omnibus Motion to Dismiss was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

I further certify that a copy of foregoing was sent by United States mail to the party listed below, who is unable to accept electronic filing as indicated on the Notice of Electronic Filing.

Defendant
Douglas Perlitz
Inmate # 36435-013
Seagoville Federal Correctional Institution
Seagoville, TX  75159


/s/ Stanley A. Twardy, Jr.
Stanley A. Twardy, Jr.

-31-