UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH JEAN-CHARLES, et al.,       :

        Plaintiffs,       :

V.       :   Case No. 3:11-CV-614 (RNC)

DOUGLAS PERLITZ, et al.,       :

        Defendants.       :

<u>RULING AND ORDER</u>

I.

Plaintiffs bring these consolidated actions to recover damages for sexual abuse they suffered while participating in Project Pierre Toussaint ("PPT"), a residential school for poor children in Cap-Haitien, Haiti.  PPT was founded by Douglas Perlitz, who was recently sentenced to 235 months' imprisonment based on his admitted sexual abuse of children at PPT between 1998 and 2008.  <u>See</u> <u>United States v. Perlitz</u>, Case No. 09-CR-207(JBA) (D. Conn.).  The third amended complaint asserts causes of action against Perlitz and Haiti Fund, Inc. ("Haiti Fund"), a nonprofit organization that operated PPT.  In addition to claims against these defendants, statutory and common law causes of action are asserted against other individuals and entities that were allegedly involved with PPT, directly or indirectly, in ways

1

that make them potentially liable for the injuries sustained

by the plaintiffs, specifically:

- Father Paul E. Carrier, S.J., Fairfield University's
Chaplain and Director of Campus Ministry and Community
Service, who served as Chairman and President of Haiti
Fund's Board of Directors during the time Perlitz was
sexually abusing children at PPT.  The complaint alleges
that Father Carrier had an inappropriate sexual relationship
with Perlitz at Fairfield when Father Carrier was University
Chaplain and Perlitz was a freshman, that he was a frequent
visitor to PPT where he stayed in Perlitz's home, that he
was in Perlitz's bedroom when Perlitz showed a pornographic
video to a PPT student, and that he shunned a Haitian
administrator at PPT after she tried to stop Perlitz's
sexual abuse of PPT students;

- Fairfield University, which allegedly co-founded PPT,
hired and retained Perlitz to operate PPT, provided
continual financial support to PPT, placed persons in
leadership positions at Haiti Fund (including Father
Carrier), promoted and marketed PPT as a mission for
students and prospective students, and regularly sent
student volunteers to work at PPT under the supervision of
Father Carrier, who allegedly was designated by Fairfield to
be its agent overseeing PPT;

- the Society of Jesus of New England (the "Society"),
which allegedly operates Fairfield, authorized Father
Carrier's involvement in PPT, and sent Jesuits in training
and student volunteers through Fairfield to work at PPT;

- the Sovereign Military Hospitaller Order of St. John
of Jerusalem of Rhodes and Malta, American Association,
U.S.A. (the "Order of Malta"), which allegedly hired and
retained Perlitz to run PPT, gave him financial support to
start PPT, continually funded and promoted PPT as an Order
of Malta project, presented Perlitz with an award in 2007
"in recognition of his work and dedication to Malta's Pierre
Toussaint School for Boys in Haiti," and placed Order of
Malta members on the Board of Haiti Fund; and

- Hope Carter, who served on Haiti Fund's Board of

Directors, helped Perlitz obtain funding to start and
operate PPT, and allegedly took actions to manipulate and
interfere with investigations of Perlitz's conduct at PPT.

Each of these defendants has filed a motion pursuant to
Fed. R. Civ. P. 12(b)(6) seeking dismissal of the action for
failure to state a claim on which relief may be granted.[1]
To survive such a motion, a complaint must allege sufficient
facts, accepted as true, to state a plausible claim for
relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell
Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007); Johnson v.
Priceline.com, Inc., 2013 WL 1223326, at *3 (2d Cir. March
27, 2013). A claim is facially plausible when it pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged. Whitfield v. O'Connell, 402 Fed. App'x 563, 565
(2d Cir. 2010). Determining whether a complaint states a
plausible claim is a context-specific task. See Iqbal, 556
U.S. at 679. Applying the plausibility standard to the
allegations of the complaint taken as a whole, the motions
to dismiss are granted in part and denied in part for

---

[1] The motions to dismiss filed by Father Carrier, Fairfield, the
Society and Ms. Carter were all directed to the second amended
complaint (ECF No. 134). After the motions were filed, the
plaintiffs filed the third amended complaint (ECF No. 197), which
added the Order of Malta as a defendant. The third amended
complaint is treated as the operative complaint here.

reasons summarized below.

II.

Count Two: 18 U.S.C. § 2255

Plaintiffs sue Father Carrier and Ms. Carter under 18 U.S.C. § 2255, which provides that "[a]ny person who, while a minor, was a victim of a violation of [various sections of Title 18 prohibiting sexual exploitation of children] may sue in any appropriate United States District Court and shall recover the actual damages such person sustains . . . ." 18 U.S.C. § 2255.[2]  The defendants argue that these claims must be dismissed because § 2255 does not provide for secondary liability.  Plaintiffs respond that § 2255 implicitly provides a cause of action against individuals who could be punished either as aiders and abettors, or as accessories after the fact, under 18 U.S.C. § 2 and § 3, respectively.  The defendants reply that the plaintiffs' construction of § 2255 is contrary to the Supreme Court's decision in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994), which makes the text of a federal statute dispositive in determining

---

[2] Section 2255 applies to violations of 18 U.S.C. § 2423(b), the offense of conviction in Perlitz's case, which makes it unlawful for a United States citizen to travel in foreign commerce for the purpose of engaging in illicit sexual conduct.

4

whether it provides for secondary liability.  <u>See</u> <u>Boim v.</u>
<u>Holy Land Found. for Relief & Dev.</u>, 549 F.3d 685, 689 (7th
Cir. 2008) ("[S]tatutory silence on the subject of secondary
liability means there is none.").

I agree with the defendants that under <u>Central Bank</u> the
lack of any reference to secondary liability in § 2255 is
fatal to the plaintiffs' position.  In <u>Central Bank</u>, the
Court was deciding whether § 10(b) of the Securities and
Exchange Act of 1934 extends to aiding and abetting.  But
the Court's holding is not based on any particular feature
of the securities laws.  <u>See</u> <u>Boim</u>, 549 F.3d at 689.  It is
the approach the Court took in <u>Central Bank</u> that matters,
not the statute it was considering.  See <u>Freeman v. DirecTV,</u>
<u>Inc.</u>, 457 F.3d 1001, 1006 n.1 (9th Cir. 2006).

Other district courts have read secondary liability
into § 2255 without extended discussion.  <u>See</u> <u>Doe v.</u>
<u>Liberatore</u>, 478 F. Supp. 2d 742, 756 (M.D. Pa. 2007).  The
conclusion reached in these cases presumably would help
further the purposes of the statute.  Under <u>Central Bank</u>,
however, the proper approach in construing § 2255 is to look
no further than the statute's text.  <u>See</u> 511 U.S. at 177
("We reach the uncontroversial conclusion . . . that the

text of the 1934 Act does not itself reach those who aid and abet a § 10(b) violation. . . . [W]e think that conclusion resolves the case.").

In Gill v. Arab Bank, PLC, No. 11-cv-3706, 2012 WL 4960358, (E.D.N.Y. Oct. 17, 2012) the court considered whether 18 U.S.C. § 2333(a), the civil remedy provision of the antiterrorism laws, provides for aiding and abetting liability. Like § 2255, § 2333 is silent with regard to the availability of secondary liability. The court recognized that wariness in extending the reasoning of Central Bank to circumscribe secondary liability under the antiterrorism laws is appropriate. After careful analysis, however, the court concluded that Central Bank precluded the plaintiffs' aiding-and-abetting claims. I reach the same conclusion with regard to the plaintiffs' claims based on § 2255.

Count Four: Violation of Customary International Law

The complaint alleges that Father Carrier and Ms. Carter aided and abetted Perlitz in committing a violation of the law of nations making them liable to the plaintiffs under the Alien Torts Statute ("ATS"), 28 U.S.C. § 1350. To plead a claim of accessorial liability under the ATS in the Second Circuit, a complaint must allege that the defendant

6

provided substantial assistance to the primary violator
"with the purpose of facilitating the alleged offenses."
Presbyterian Church of Sudan v. Talisman Energy, 582 F. 3d
244, 247 (2d Cir. 2009).

Assuming without deciding that Perlitz's criminal
conduct constitutes a cognizable violation of international
law under the ATS, the allegations of the complaint fail to
support a plausible conclusion that either Father Carrier or
Ms. Carter provided substantial assistance to Perlitz or PPT
with the purpose of facilitating Perlitz's sexual abuse of
the minor plaintiffs.  The complaint alleges that these
defendants continued to fund, support, promote and actively
participate in the affairs of PPT even after they knew or
should have known of Perlitz's criminal conduct.  There is
no well-pleaded allegation, however, that either of them
remained involved at PPT for the very purpose of
facilitating Perlitz's crimes, and it is implausible that
either of them did so.  See id. at 262 ("There is evidence
that Talisman (partially) financed the road-building . . .
and helped build other infrastructure, notwithstanding
awareness of the Government's [unlawful] activity.  But
obviously there are benign and constructive purposes for

these projects, and (more to the point) there is no evidence that any of this was done for an improper purpose."). Accordingly, these claims will be dismissed.

Count Five: Negligent Supervision of Perlitz

The complaint alleges that Father Carrier, Fairfield, the Society, the Order of Malta and Ms. Carter each had a duty to supervise Perlitz in connection with his activities as the head of PPT, and that they negligently breached this duty resulting in harm to the plaintiffs.  Under Connecticut law, which generally follows the Restatement of Torts, an employer may be liable for negligently supervising an employee who causes harm to a third party when the harmful conduct was reasonably foreseeable.  See Gutierrez v. Thorne, 13 Conn. App. 493, 500 (1988).[3]  The standard of reasonable foreseeability is satisfied when an "ordinary [person] in the defendant's position, knowing what he knew or should have known, [would] anticipate that harm of the

---

[3] The parties seem to be in agreement that Connecticut law applies in this case.  The complaint alleges both diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331.  See Compl. ¶ 6.  As at least some of the alleged conduct relevant to plaintiffs' common law claims occurred in Connecticut, and no choice of law questions have been raised, the Court applies Connecticut law to these claims in ruling on the motions to dismiss.

general nature of that suffered was likely to result[.]"
Allen v. Cox, 285 Conn. 603, 610 (2008).

The moving defendants contend that they did not employ
Perlitz and thus cannot be liable to the plaintiffs based on
a theory of negligent supervision.[4]  The allegations of the
complaint on this point are unclear.  The complaint alleges
that Haiti Fund hired and retained Perlitz as director of
PPT and controlled and directed PPT and there is no express
allegation that Haiti Fund was a mere instrumentality of the
moving defendants.  The complaint also alleges, however,
that the moving defendants established PPT along with
Perlitz and that Perlitz operated PPT under the supervision
and auspices of these defendants.  Taking the allegations of
the complaint as a whole, I conclude that the plaintiffs
have alleged enough factual matter, accepted as true, to
support a plausible inference that each of the moving
defendants had a duty to supervise Perlitz in his activities
as the director of PPT.

_____

[4]  Ms. Carter and Father Carrier argue that this claim and
the other common law claims against them are barred under
charitable immunity doctrines, such as the Volunteer Protection
Act, 42 U.S.C. § 14503, and Conn. Gen. Stat. § 52-557m, which
shield uncompensated volunteers from liability.  But the
complaint alleges that they were paid for their services in
connection with Haiti Fund.  Their reliance on charitable
immunity is therefore unavailing at this stage.

The defendants argue that these claims also must be dismissed because they lacked notice of Perlitz's propensity to sexually abuse children.  Generally, a person is not responsible for anticipating the criminal conduct of another unless he or she knows or has reason to know of the other's criminal propensity.  <u>See</u> Restatement (Second) of Torts, § 302 B, comment (d)(1965).  The plaintiffs allege that Father Carrier was on notice of Perlitz's wrongdoing as a result of what he saw when he visited PPT and that he colluded with Perlitz to conceal the abuse.  I agree that the allegations regarding Father Carrier's knowledge of Perlitz's wrongdoing are sufficient to support a claim against him for negligent supervision of Perlitz.

The other defendants argue that any knowledge on the part of Father Carrier regarding Perlitz's criminal conduct cannot be imputed to them under the adverse interest doctrine, which provides that when an agent acts adversely to his principal, the agent's actions and knowledge are not imputed to the principal.  <u>See</u> <u>Mut. Assur. Co. of City of Norwich v. Norwich Sav. Soc.</u>, 128 Conn. 510, 513 (1942) ("The general rule is that knowledge of an agent will not ordinarily be imputed to his principal where the agent is

10

acting adversely to the latter's interest."); <u>Reider v.</u>
<u>Arthur Andersen, LLP</u>, 47 Conn. Supp. 202, 209-10 (Super. Ct.
2001); Restatement (Second) Agency § 282(1).  To the extent
the evidence shows that Father Carrier colluded with Perlitz
to conceal Perlitz's sexual abuse, the adverse interest
exception could apply.[5]  Even then, however, the other
defendants could remain subject to liability for negligent
supervision of Perlitz because knowledge of another's
criminal propensity is not always necessary to establish
liability for failing to protect a third party against
criminal conduct.  <u>See</u> Restatement (Second) Torts, § 302 B,
comment (f).[6]

_____

[5]  For the adverse interest exception to apply, it
would have to be shown that Father Carrier acted entirely
for his own or Perlitz's purposes. See Restatement (Second)
Agency § 282(1).

[6]  Section 302 B, comment (f) provides:
"It is not possible to state definite rules as to when an
actor is required to take precautions against intentional or
criminal misconduct.  As in other cases of negligence . . .,
it is a matter of balancing the magnitude of the risk
against the utility of the actor's conduct.  Factors to be
considered are the known character, past conduct, and
tendencies of the person whose intentional conduct causes
the harm, the temptation or opportunity which the situation
may afford him for such misconduct, the gravity of the harm
which may result, and the possibility that some other person
will assume the responsibility for preventing the conduct or
the harm, together with the burden of the precautions which
the actor would be required to take.  Where the risk is
relatively slight in comparison with the utility of the

This principle is illustrated by the decision in
Gutierrez.  In that case, a state agency provided its
employee with a key to the apartment of a mentally-
handicapped client.  The employee used the key to enter the
apartment, where he sexually assaulted the plaintiff.  13
Conn. App. at 497.  The employee had no history of sexual
assault and no assault had ever been reported in the
agency's history.  Even so, the court held that "[u]nder the
circumstances . . . , the foreseeability of whether the
defendant's conduct in permitting [the employee] to have a
key to the plaintiff's apartment would result in a sexual
assault upon the plaintiff [was] a question to be resolved
by the trier of fact."  Id. at 501.

In this case, as in Gutierrez, the moving defendants
allegedly facilitated Perlitz's unrestricted access to and
control over vulnerable individuals whose ability to fend
off his advances was significantly impaired.  See id.
Importantly, Perlitz's sexual abuse of the plaintiffs
occurred at a time when organizations involved with young
people had become cognizant of the need to take precautions
to protect young people against a risk of sexual abuse by

---

actor's conduct, he may be under no obligation to protect
the other against it."

pedophiles.  Given these factors, the plaintiffs may be able
to raise a jury issue as to whether the harm they suffered
was reasonably foreseeable to the defendants, even assuming
the defendants had no knowledge of Perlitz's propensity to
sexually abuse children.  The motions to dismiss these
claims will therefore be denied.

        Count Six: Negligent Supervision of Carrier

        The complaint alleges that Fairfield and the Society
had a duty to supervise Father Carrier in connection with
his activities at PPT, including his interactions with
Perlitz, and that they breached this duty resulting in harm
to the plaintiffs.  The defendants contend that these claims
must be dismissed because they had no duty to supervise
Father Carrier at PPT.  No duty existed, they argue, because
Father Carrier was acting in his separate capacity as
Chairman and President of Haiti Fund, and they had no reason
to suspect he would aid Perlitz in sexually abusing
children or concealing abuse.  They urge that imposing a
duty on them to supervise Father Carrier in his role as a
volunteer officer of Haiti Fund would be inconsistent with
public policy because it would tend to deter organizations
from encouraging employees to seek involvement in charitable

13

activities.

Though the defendants' arguments have some force, I conclude that these claims survive at this stage for substantially the reasons stated by the plaintiffs. The allegations of the complaint contain sufficient factual matter, accepted as true, to plausibly suggest that Fairfield designated Father Carrier to be its agent overseeing PPT, and that Father Carrier required and received the Society's authorization for his involvement in PPT. Taking the allegations of the complaint as a whole, it is plausible to conclude that the defendants had a duty to supervise Father Carrier in connection with his activities relating to PPT.

The defendants argue that the allegations of the complaint are insufficient to support a plausible claim that they acted negligently in supervising Father Carrier. The plaintiffs respond that the defendants knew or should have known that relying on Father Carrier to oversee PPT was unreasonable due to his own inability to understand and maintain appropriate boundaries with vulnerable individuals. The allegations of the complaint provide enough support for this claim to make it plausible and thus sufficient to

14

withstand the motions to dismiss.

The complaint alleges that when Perlitz was sexually abusing the plaintiffs, he told them he had been introduced to homosexual activities as a freshman at Fairfield by Father Carrier.  The complaint further alleges that Father Carrier was in Perlitz's bedroom when Perlitz showed a pornographic video to a PPT student, that Father Carrier saw Perlitz hug a PPT student from behind by pressing his body against the student's back, and that Father Carrier shunned a Haitian administrator at PPT after she tried to stop Perlitz's sexual abuse of students.

The defendants argue that they lacked notice of Father Carrier's alleged sexual relationship with Perlitz at Fairfield and that Father Carrier's alleged knowledge of Perlitz's wrongdoing at PPT cannot be imputed to them under the adverse interest exception.  Whether the adverse interest exception applies depends on what the evidence shows.  The exception "is narrow and applies only when the agent has 'totally abandoned' the principal's interests." See Wright v. BankAmerica Corp., 219 F.3d 79, 87 (quoting In re Mediators, Inc., 105 F.3d 822, 827 (2d Cir. 1997).[7]  Even

---

[7]  In Wright, the Court of Appeals applied New York law but I have no reason to think Connecticut law on the adverse

assuming the exception applies, lack of notice of Perlitz's criminal propensity and Father Carrier's alleged inability to understand and maintain proper boundaries would not necessarily be dispositive with regard to this claim as the defendants' knowledge of other facts and circumstances could suffice to support liability under general principles of negligence law.  Accordingly, these claims survive.

Count Seven: Breach of Fiduciary Duty

The complaint alleges that all the moving defendants, through their involvement in PPT, owed a fiduciary duty to the plaintiffs and that they breached this duty by failing to protect the plaintiffs against Perlitz's sexual abuse. Fiduciary relationships are "characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620, 640 (2002). The Connecticut Supreme Court has "refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations." Alaimo v. Royer, 188 Conn. 36, 41 (1982).  Instead, it has chosen "to leave the

interest exception is different.

16

bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other."  Id.  Consistent with the Supreme Court's approach, trial courts in Connecticut typically address the legal sufficiency of breach of fiduciary duty claims on motions for summary judgment, rather than at the pleadings stage.

Defendants argue that the breach of fiduciary duty claims should be dismissed because the allegations in the complaint do not show the existence of a relationship between the plaintiffs and any of the moving defendants like the one in Martinelli v. Bridgeport Catholic Diocesan Corp., 196 F.3d 409 (2d Cir. 1999), where there was sufficient evidence to support a finding that the Diocese owed a fiduciary duty to a parishioner who was abused by one of the Diocese's priests.  The plaintiffs respond that as street children in the poorest country in the Western Hemisphere they were uniquely vulnerable to abuse, and that they reposed a high degree of trust and confidence in the persons and entities responsible for the proper operation of PPT, which voluntarily took custody of the plaintiffs and undertook to provide for their most basic needs.

17

I agree with the plaintiffs that the breach of fiduciary duty claims are sufficiently supported by the allegations of the complaint taken as a whole to survive the motions to dismiss.  Crediting the allegations of the complaint, Perlitz ran PPT under the supervision and auspices of the defendants and the defendants knew the minor plaintiffs were uniquely vulnerable to abuse.  It is plausible to conclude that in this unusual situation the defendants assumed a fiduciary duty to protect the plaintiffs while they were in the custody of PPT.  It is also plausible to conclude that they breached this duty by failing to take reasonable precautions to protect the minor plaintiffs from Perlitz's sexual abuse.

Count Eight: Vicarious Liability

The complaint alleges that Perlitz was the agent of each of the moving defendants and used the existence of these relationships to gain the trust and confidence of the plaintiffs in order to abuse them.  On this basis, the plaintiffs contend that the defendants are vicariously liable for the plaintiffs' injuries.  Defendants argue that they cannot be held vicariously liable for Perlitz's sexual abuse because there are no allegations plausibly suggesting

18

that he was their agent or that the abuse occurred within the scope of his employment.  See A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208 (1990).  I conclude that even assuming Perlitz was the defendants' agent, they are not subject to vicarious liability under Connecticut law for his sexual abuse of the plaintiffs.

With rare exceptions, courts applying Connecticut law have consistently held that sexual abuse is outside the scope of the abuser's employment.  See, e.g., Nutt v. Norwich Roman Catholic Diocese, 921 F. Supp. 66, 71 (D. Conn. 1995) ("Sexually abusive conduct amounts to the abandonment of the Church's business.  As a matter of law, therefore, the alleged sexual abuse, even if true, cannot be said to further the defendant's business and therefore is outside of the scope of employment.").  Plaintiffs allege no facts plausibly suggesting that Perlitz's sexual abuse of the plaintiffs was within the scope of his employment as director of PPT.

Plaintiffs rely on the Restatement (Second) of Agency § 219(2), which provides that "a master is not subject to liability for the torts of his servants acting outside the scope of their employment unless . . . (d) the servant . . .

was aided in accomplishing the tort by the existence of the agency relation."[8]  However, Connecticut courts have consistently declined to apply the doctrine of apparent authority in tort cases, notwithstanding the principles of agency set forth in the Restatement (Second).  See Mullen v. Horton, 46 Conn. App. 759, 771-72 (1997) ("[T]he doctrine . . . hold[ing] a principle, who represents that another is his servant or agent and thereby causes a third person to rely justifiably on the care or skill of such agent, vicariously liable . . . has never been used in such a manner [in Connecticut]."); see also Beach v. Jean, 46 Conn. Supp. 252, 260 (Super Ct. 1999) ("[I]n Connecticut, the doctrine of apparent authority is a principle of contract law or evidence rather than the law of torts.").  In addition to the lack of support for the plaintiffs' position in Connecticut precedent, the allegations of the complaint taken as a whole do not support a plausible inference that the moving defendants held out Perlitz as authorized to engage in sexual exploitation of the plaintiffs. Accordingly, the vicarious liability claims will be

---

[8] This section of the Restatement has been superseded by the Restatement (Third).  See Lara v. Legionaries of Christ, X03HHDCV106016974S, 2011 WL 4347919, at *5 n.2 (Conn. Super. Ct. Aug. 30, 2011).

dismissed.[9]

Count Ten: Secondary Liability Under 18 U.S.C. § 1595

Section 1595 provides a civil remedy for victims of violations of 18 U.S.C. § 1591, Sex Trafficking of Children by Force, Fraud, or Coercion.  Section 1591 states, in pertinent part, that:

> (a) Whoever knowingly-- (1) . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person . . . knowing, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . .

18 U.S.C. § 1591.  Section 1591 also provides that "(d) Whoever obstructs, attempts to obstruct, or in any way

---

[9]  Plaintiffs contend that vicarious liability applies under Restatement (Second) Agency § 219(2)(b), which provides that a master may be liable for the tort of a servant acting outside the scope of his employment if the master was negligent or reckless.  The plaintiffs' theory of liability based on this part of the Restatement appears to mirror their claims alleging negligent supervision.  No Connecticut case has been found applying § 219(2)(b) to hold a master liable for an agent's sexual abuse.  Given the lack of Connecticut precedent on this point, and the Connecticut courts' reluctance to impose vicarious liability for sexual abuse except in unusual circumstances not alleged here, I conclude that the Connecticut Supreme Court would decline to adopt the plaintiffs' theory of liability based on § 219(2)(b) of the Restatement (Second) of Agency and would leave them to their substantially similar claims alleging negligent supervision.

interferes with or prevents the enforcement of this section, shall be [punished]." Id.

Plaintiffs claim that Father Carrier and Ms. Carter can be held liable under § 1595 because they aided and abetted Perlitz in violating § 1591. Plaintiffs urge that § 1595 incorporates secondary liability under 18 U.S.C. §§ 2 and 3. However, the text of the statute does not support such a reading and thus the argument fails under Central Bank.[10]

The plaintiffs also claim that Father Carrier and Ms. Carter obstructed the enforcement of § 1591, making them principal violators of § 1591(d). This claim fails to satisfy the plausibility standard. The complaint alleges that these defendants manipulated Haiti Fund's investigations into Perlitz's sexual abuse of children at PPT by preventing Board members from questioning witnesses and by writing letters to donors stating that the accusations against Perlitz were groundless. In addition, the complaint alleges that Ms. Carter flew to Haiti to remove Perlitz's computer in order to prevent investigators

---

[10] Sections 1591 and 1595 do provide for a form of secondary liability for one who "benefits . . . from participation in a venture" that violates the statute, but plaintiffs bring a separate claim under this theory in count twelve.

from discovering that it contained pornographic material involving young boys.  See Compl. ¶ 68.  While it is plausible to infer that the defendants took these actions to help Perlitz and PPT and avoid embarrassment themselves, it is implausible that they knowingly sought to obstruct enforcement of the federal statute criminalizing the commercial sex trafficking of children.  Accordingly, the motions to dismiss will be granted as to this claim.

Count Twelve: Participation in a Venture Under § 1595

Section § 1595 also provides a civil remedy against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."  Plaintiffs claim that Father Carrier and Fairfield are subject to liability under this section because they knowingly benefitted financially from PPT, which they knew or should have known was a "venture" engaging in a violation of § 1591.[11]  Defendants argue that they cannot be held liable because the allegations are insufficient to support a plausible inference that PPT was

---

[11] Under the statute, "venture" means "any group of two or more individuals associated in fact, whether or not a legal entity."  18 U.S.C. § 1591(e)(5).

23

engaged in the commercial sex trafficking of children.

The offense conduct prohibited by § 1591 is "recruiting" or "maintaining" a minor "knowing, or in reckless disregard of the fact," that the minor "will be caused to engage in a commercial sex act."  18 U.S.C. § 1591.  "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  Plaintiffs allege that the vulnerable Haitian boys residing at PPT had no place to sleep except PPT and depended on PPT for basic necessities, including food and clothes.  See Compl. ¶ 56. Plaintiffs also allege that Perlitz caused these minor boys to engage in sexual activity in exchange for basic necessities, and that he instructed PPT administrators to deny their requests for financial assistance so they would have to appeal to him.  Id. at ¶¶ 51-53, 68.  At least one PPT administrator allegedly learned that Perlitz was sexually abusing PPT students and confronted Perlitz.  Id. at ¶ 68.  These allegations are sufficient to support an inference that PPT was a "venture" covered by the statute.

Defendants also contend that even if PPT was a venture engaged in violating § 1591, the allegations of the

24

complaint do not support a plausible inference that they knew or should have known. The complaint alleges that Father Carrier knew at least one PPT student was living at Perlitz's home, witnessed Perlitz show at least one student a pornographic video, and stopped communicating with the PPT administrator who confronted Perlitz about sexual abuse. See id. at ¶¶ 64, 68. Viewed in the context of the allegations of the complaint as a whole, these allegations concerning Father Carrier's knowledge of Perlitz's wrongful activities raise a plausible inference that he knew or should have known PPT was violating § 1591.

Fairfield argues that Father Carrier's knowledge cannot be imputed to the University under the adverse interest exception. The University points to the plaintiffs' allegations that Father Carrier not only ignored evidence of Perlitz's sexual abuse, but took actions that helped conceal Perlitz' crimes. As discussed above, proof of those allegations could support the University's position regarding the applicability of the adverse interest exception. However, the allegations of the complaint taken as a whole do not compel the conclusion that the exception applies as a matter of law. Accordingly, these claims

25

survive.[12]

III.

For the foregoing reasons, the motions to dismiss (ECF Nos. 157, 159, 162, 166, and 217), which are deemed to be directed to the third amended complaint, are hereby granted in part and denied in part as follows: **GRANTED** as to Counts Two, Four, Eight and Ten, and **DENIED** as to Counts Five, Six, Seven and Twelve.

So ordered this 31st day of March 2013.

_____/s/RNC_____<br>
Robert N. Chatigny<br>
United States District Judge

---

[12] To the extent Father Carrier argues that he did not benefit financially from participation in PPT, the complaint contains sufficient allegations to the contrary.